**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DANIELLE ALSTON**, *Plaintiff,* v. **LT. BRIAN DOUGHERTY,** *Defendant.* | Case No. 2:18-cv-02362-JDW |

## MEMORANDUM

The evidence in this case suggests that Sergeant Danielle Alston worked in an unacceptable, harassing environment at the Philadelphia Police Department's 35th District. Her fellow officers commented on the fit of her uniform and her appearance on a regular basis. At least one co-worker spoke to her using a vile epithet. She deserves sympathy for having had to endure that environment.

Unfortunately for her, the law does not impose liability for every harassing environment. Instead, she has to show that management-level employees were aware of the conduct. In this case, she has accused her commander, Lieutenant Brian Dougherty, of having participated in and tolerated her harassment. But her claims fail. The only time that Lt. Dougherty did or said anything offensive, he sent an inadvertent text message for which he immediately apologized. And there is no evidence that he was aware of the environment in which Sgt. Alston toiled. The Court will therefore grant Lt. Dougherty's summary judgment motion.

I.   **FACTS**

   A.   **The Text Message**

Sgt. Alston began working for the Philadelphia Police Department ("PPD") in 2003. She was assigned to the 35th District from 2016 until her termination in 2018. Around March 2017, Lt. Dougherty was assigned to the 35th District and was Sgt. Alston's direct supervisor. In addition to Sgt. Alston, two other male sergeants worked at the 35th District: Sgt. Kevin Gorman and a Sgt. Butts.

In September 2017, while both Sgt. Alston and Lt. Dougherty were on duty inside the 35th District building, they were exchanging work-related text messages. Then, Lt. Dougherty sent Sgt. Alston a sexually-themed image via text message. Within 15 minutes, Lt. Dougherty texted Sgt. Alston and explained that he meant to send the image to his wife, not to Sgt. Alston. She replied, "Hilarious. No prob lol." (ECF No. 34-4.) Lt. Dougherty also apologized to Sgt. Alston in person. Although her response minimized the incident, Sgt. Alston testified that she found the image offensive, and she only minimized it because Lt. Dougherty was her superior officer.

   B.   **Comments By Sgt. Alston's Co-Workers**

Sgt. Alston alleges that her co-workers, including Sgt. Gorman and Sgt. Butts, disparaged her about her 8-10 times per month. In one incident in 2017, Sgt. Gorman called Sgt. Alston a "black bitch" following a disagreement about whether Sgt. Alston would cover a shift for Sgt. Gorman. (ECF No. 35-4 at 18:18-19:6.) Sgt. Alston complained to Lt. Dougherty, but Lt. Dougherty did not take any action. Sgt. Alston testified that the incident during which Sgt. Gorman referred to her as a "black bitch" was the only time that she reported to Lt. Dougherty that she had been harassed.

Sgt. Gorman and other officers also made routine comments about Sgt. Alston's body shape and the fit of her uniform. These types of comments occurred 8-10 times a month over the course of at least a year. Sgt. Alston did not bring these comments to Lt. Dougherty's attention. At least one officer testified that the other Sergeants mistreated Sgt. Alston's subordinates and gave them bad or difficult assignments. Sgt. Alston says that she attempted to report the harassment to Lt. Dougherty's commander Captain Cragen by leaving a message, but she never heard back. According to Sgt. Alston, she went to the PPD's Employee Assistance Program ("EAP") multiple times for emotional distress that she experienced due to the harassment.

## C. Procedural History

Sgt. Alston brought federal claims of racial discrimination and of racial- and gender-based hostile work environment against Lt. Dougherty in his individual and official capacity. Lt. Dougherty has moved for summary judgment on all claims. In her opposition, Sgt. Alston withdrew her claim of racial discrimination. Therefore, the Court only analyzes whether summary judgment is appropriate for Sgt. Alston's hostile work environment claim.

After briefing closed on the summary judgment motion, Sgt. Alston filed a motion to incorporate after-discovered evidence. The evidence that she submits is testimony from a deposition of an officer who reported to her, Dawn Kennedy, from a sexual harassment case that Officer Kennedy is pursuing against the City. Lt. Dougherty opposes that motion, but not on procedural grounds. He argues that the evidence is irrelevant. Because he has not raised a procedural objection, the Court will consider the evidence.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted).

In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). The movant is entitled to judgment as a matter of law when the non-moving party fails to make such a showing. *See Celotex*, 477 U.S. at 323.

### III.   ANALYSIS

The Equal Protection Clause proscribes sex-based discrimination. *See Starnes v. Butler Cty. Court of Common Pleas, 50th Judicial Dist.*, -- F.3d --, 2000 WL 4930260, at * 5 (3d Cir. Aug. 24, 2020). Section 1983, in turn, proscribes violations of constitutional rights under color of state law. *See* 28 U.S.C. § 1983. Section 1983 claims for discrimination and Title VII claims share the same elements. *See Lewis v. Univ. of Pittsburgh*, 725 F.3d 910, 915 n.5 (3d Cir. 1983). Sexual harassment that creates a hostile work environment violates Title VII. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). "Under Title VII, a hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is, sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

4

working environment." *Starnes*, 2020 WL 4930260, at *6 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 539 U.S. 101, 116 (2002)).

To prove a hostile work environment claim, a plaintiff must show: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was severe and pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position; and (5) *respondeat superior* liability exists. *See id*. In determining whether a plaintiff has made the requisite showing, a court must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or a mere offensive utterance, and whether it reasonably interferes with an employee's work performance. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998). "Less severe isolated incidents which would not themselves rise to the level of discrimination may, when taken together as part of the overall scenario, evidence discriminatory animus, and one severe incident may be enough to create a hostile environment." *Starnes*, 2020 WL 4930260, at *6 (cleaned up).

### A.   Intentional Discrimination Because of Sex

Sgt. Alston's co-workers harassed her intentionally because of her sex. Sgt. Gorman used a gender-based epithet to her face. He and other officers commented about her uniform fit and her physical appearance.

The story is different with respect to Lt. Dougherty's text message to Sgt. Alston. No evidence suggests that Lt. Dougherty sent the text message to Sgt. Alston intentionally. Nothing in the record contradicts his assertion that he sent it by accident. To the contrary, it is undisputed that he apologized to Sgt. Alston both by text and in person, close in time to sending the text message. Sgt. Alston asks the Court to assume that Lt. Dougherty acted intentionally, but she offers

no basis for that assumption. Everyone makes mistakes, and a misfired text message is not a basis for imposing liability.

### B. Severe and Pervasive

There is no quantitative formula to determine whether conduct was severe and pervasive. Instead, a plaintiff must show that discrimination in her workplace was "sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20 (1993). Severity and pervasiveness are "alternative possibilities: some harassment may be severe enough to contaminate an environment even if not pervasive; other, less objectionable, conduct will contaminate the workplace only if it is pervasive." *Castleberry v. STI Grp.*, 863 F.3d 259, 264 (3d Cir. 2017). Often, "the severity and pervasiveness evaluation is particularly unsuited for summary judgement [sic] because it is 'quintessentially a question of fact.'" *Id*. at 429 (*quoting O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)) (*see also Hayut v. State Univ. of New York*, 352 F.3d 733, 745 (2d Cir. 2003) ("Generally speaking, this analysis is fact-specific and, therefore, as in this case, is best left for trial.")

The comments that Sgt. Alston's co-workers directed at her, while obnoxious and inappropriate, were not so severe that any one of them would have contaminated her workplace. But the comments were continuous, time after time, month after month. Taken together, these incidents are pervasive enough to withstand summary judgment. *See, e.g.*, *Flick v. Aurora Equip. Co.*, No. CIV.A. 03-CV-2508, 2004 WL 220859, at *6 (E.D. Pa. Jan. 13, 2004) (combination of sex-specific derogatory terms and "regular instances of hostility directed at Plaintiff by her co-workers creates an inference of a hostile work environment sufficient to survive summary judgment").

### C. Offensiveness

The evidence shows that Sgt. Alston found the comments about her subjectively offensive. She complained to a mentor about them and to the PPD's EAP program. In addition, the harassing nature of the comments would have offended any reasonable employee in Sgt. Alston's position.

### D. Basis For Employer Liability

A supervisor may be personally liable for a hostile work environment if he, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). To make such a showing, a plaintiff must establish that the defendant (1) was a management level employee, (2) had actual or constructive knowledge of the harassment, and (3) failed to take prompt and appropriate remedial action. *See Huston v. Proctor & Gamble Paper Prods. Co.*, 568 F.3d 100, 104 (3d Cir. 2009).

Sgt. Alston has not submitted facts that tend to establish that Lt. Dougherty had actual or constructive knowledge of the harassment. He knew about Sgt. Gorman's epithet because Sgt. Alston told him about it. But there is no evidence in the record to suggest that Lt. Dougherty knew about any other harassing behavior, such as comments about Sgt. Alston's uniform fit or the treatment of Sgt. Alston's subordinates. Sgt. Alston attempts to avoid this hole in the record by arguing that Lt. Dougherty had constructive knowledge because knowledge of the harassment was "widely known." (ECF No. 38 at 2.) But the fact that some other officers knew about comments does not mean that their supervisor was aware of them.

To hold otherwise would stretch the concept of "constructive knowledge" too far. "Constructive knowledge" means a basis to impute someone else's knowledge to a supervisor. That's not what Sgt. Alston is arguing, though. She wants the Court to assume that Lt. Dougherty knew about the harassment because other officers knew. But there is no evidence that any of those

7

subordinates relayed those comments up the chain of command or that they made the comments in front of Lt. Dougherty or someone else in the chain of command. Without some evidence, any assumption that Lt. Dougherty knew about those statements would be more than a reasonable inference, it would be a logical leap. The Court need not make that leap.

Plaintiff also points to Officer Kennedy's deposition testimony in her separate sexual harassment case against the City. Nothing in Officer Kennedy's deposition suggests that Lt. Dougherty knew about any conduct directed at Sgt. Alston. It therefore does not bridge this evidentiary gap.

Without evidence that Lt. Dougherty knew about the ongoing harassment of Sgt. Alston, Sgt. Alston has evidence only that Lt. Dougherty knew that Sgt. Gorman used an epithet about her. Standing alone, Lt. Dougherty's knowledge of this reprehensible but isolated remark was not enough to place him on notice that there was an on-going pattern of sexual harassment. *See, e.g.*, *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999).

## IV.  CONCLUSION

The Court finds the treatment to which Sgt. Alston's co-workers subjected her to be disgusting. No one should have to endure such working conditions, let alone a police officer who has dedicated herself to public safety. But she has not shown a basis to hold Lt. Dougherty liable for that conduct. For that reason, the Court will grant Lt. Dougherty's summary judgment motion. Because the Court finds no basis to impose liability on Lt. Dougherty, it does not reach the issue of whether Lt. Dougherty had qualified immunity. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

August 31, 2020